UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN

| | | |
|---|---|---|
| In re: | § | Case No.: 20-10118-hcm |
| | § | |
| Alexander Emric Jones, | § | Judge H. Christopher Mott |
| | § | |
| Debtor. | § | Chapter 11 (Involuntary) |

---

### CREDITING PETITIONER'S RESPONSE IN OPPOSITION TO ATTORNEY ERIC TAUBE'S RESPONSE TO CREDITOR'S MOTION TO DISQUALIFY

TO THE HONORABLE CHRISTOPHER MOTT, UNITED STATES BANKRUPTCY JUDGE:

Kelly Jones ("**Creditor/I**") pro se files this her response to the Attorney Eric Taube's (*Mr. Taube's*) Motion to Disqualify Debtor's (Alex Jones') Attorney filed by Kelly R. Jones in the above referenced and numbered cause as follows:

### RESPONSE

1. Creditor has objected the appearance of her former long-term business, personal, and estate planning business attorney, Respondent Eric J.Taube, as Alexander Emric Jones' counsel against her in this case.

2. Mr. Taube's involvement with Creditor's business and family was broad and extensive, and his very substantial role in her family's affairs were long-term, from 2007-2015.

3. Mr. Taube's representation included legal advice and representation and as business advisor and Registered Agent for multiple entities he incepted to protect my and Alex Jones' assets from future liability due to the controversial nature of Alex Jones' work.

1

4. Unbeknown to me until recently, Mr. Taube's representation included nonfiduciary acts while he represented me, including creating hidden, undisclosed assets and conspiratorially and secretively formed business entities, of which he is now Registered Agent.

5. I have learned that Mr. Taube is the Registered Agent for Austin Shiprock Publishing, LLC, an entity created in secrecy by Alex Jones during our marriage, to hide money and through which large sums of money flowed.

6. Alex Jones did not disclose during Austin Shiprock Publishing, LLC, to me in any way, nor during the divorce. I have only recently learned of this entity's existence.

7. Austin Shiprock Publishing, LLC is an undivided asset from my and Alex Jones' community property estate. Austin Shiprock Publishing, LLC reports taxes to the Texas Secretary of State, as it has for years. Austin Shiprock Publishing, LLC was then and remains my property.

8. Mr. Taube is the Trustee of the Greenleaf Trust, a Trust that benefits my children and could benefit my niece and nephews, and of which I was the beneficiary.

9. I was forced to resign my position as beneficiary, although this was not ordered, nor did I knowingly or willingly agree to do so. Nonetheless, the blurry line still exists as to my interest in this Trust, as a mother and aunt.

10. Mr. Taube is additionally the Registered Agent of multiple entities that have undivided intellectual property, which could be very valuable, including domain names such as Infowars.com.

11. None of the intellectual property of any community estate business asset was valued or divided during the financial case of the divorce. I did not agree to bifurcate the divorce, but the divorce financial case was bifurcated (I am not aware of any motion regarding this bifurcation.)

2

12. Mr. Taube is the Registered Agent of Jones Productions, LLC, a business entity that was "not considered" during the divorce, although it was a part of our community marital estate and I was 51% Managing Member of its parent entity.

13. Jones Productions, LLC has value and should have been considered during the financial case of the divorce. As such, it contitutes undivided community property and is currently my property

14. Mr. Taube represented me for years, in business and personal matters. On many occasions his legal representation of me included matters in which I solely or mostly provided input.

15. Alex Jones is quasi-illiterate (and/or dyslexic). He did not use email during our marriage other than through me. Communications between Mr. Taube and Alex Jones were transmitted via my email, as Alex Jones' business partner and primary Managing Member of Free Speech Systems, LLC. Not only did these communications pass through me, I was involved in the decisions regarding these legal matters, and I wrote the emails to Mr. Taube.

16. During the years that Mr. Taube represented me, he acted like he was not ony my legal representation, but a friend. He complimented me as a mother, and he indicated that he liked me. He praised me for how I had educated and raised my son, who was so articulate at such a young age. I knew of his personal life as he knew of mine.

17. I knew, for instance, of his daughter, Sarah's (aka, "Sour's"- her high school nickname) & saw her many times Marleigh Jones, Alex Jones' sister. She knew me by face and name.

18. I was around Eric Taube's daughter, and his wife, Judy, many times. I had dinner with them hung out with them at parties. I knew them so well that I knew of Judy's medical issues, as I did of their travels to Europe.

3

19.  Yet, Mr. Taube has appeared in this cause, in which he has several provable, undeniable conflicts of interest, in the most unethical, shaming way, even insisting that he is David Jones' friend (and clearly no friend of mine), although I trusted him and knew him well, as my counsel and as a distant friend, more than an acquaintance or an attorney.

20.  Sadly, Mr. Taube's only loyalty and friendship appears to be to self and wallet and clearly not to the oath he swore as an Officer of the Court.

21.  Mr. Taube has purposefully lied to the court by saying he did represent me in the past ten years, in open court and in pleadings. This is patently untrue, as documented by our written communications, from as recently as 2013, will show and because he clearly represented my business, Free Speech Systems, LLC, which I owned up until the year 2015.

22.  Mr. Taube took a great gamble in stating otherwise, failing to anticipate that I have long retained this evidence for the purpose of showing what he has done.

23.  On the most basic merits of my Motion to Disqualify, Mr. Taube knows he has a conflict of interest.

24.  Mr. Taube admitted that he has a conflict of interest on April 2, 2020, in the hearing on Alex Jones' Motion to Dismiss, which was flawed on law easily discernable to an attorney (yet hard for a pro se litigant to learn), and which was denied by this court.

25.  In addition to his admission that he has a conflict of interest, Mr. Taube had the audacity to argue that I had "waived" this conflict of interest, which he did not disclose to me, yet used to ameliorate Alex Jones's financial position during the divorce, all the keeping me purposefully unaware (and never terminating his representation).

4

26. I was a wife and mother seeking to leave a horrible relationship of domestic violence, and Eric Taube (and Alex Jones) took advantage of my ignorance of the law and did not disclose the conflict or interest, nor my rights to protest his firm's representation of Alex Jones in the divorce, a clear Breach of Fiduciary Duty.

27. Mr. Taube, who I trusted with my livelihood and my children's inheritance, who I sat with many a night in family gatherings, and who I trusted with my business and estate, has raised his flag to maintain his unethically decision to represent Alex Jones in this case.

28. He has appeared in the cruelest way, presenting matters immaterial to this case (in violation of the Federal Rules of Civil Procedure) and so as to muddy the waters and to attempt to bias the court against me.

29. Mr. Taube's pleadings in the case belie his collusion with Alex Jones' attorneys in the family lawsuits he has filed against me, Attorneys Randall Wihite and David Minton, with whom there are additional conflicts of interests.

30. Mr. Taube not only has a conflict of interest with these attorneys, as I will outline below, but he has designated David Minton as a witness and has offered Randall Wilhite as a witness, via his sworn affidavit.

31. I have already provided evidence which was shown Mr. Wilhite's affidavit to be at best a manipulation (if not a fraudulent instrument) to misguide the court, with hard evidence of Mr. Wihite's written communications to me.

5

32. Attorneys Randall Wilhite and David Jones represented Alex Jones during the financial case of the divorce, which considered our business entities, of which Eric Taube was jointly my and Alex Jones' representation.

33. Attorneys Randall Wilhite and David Minton have joined forced/colluded with Eric Taube to muddy the waters with extraneous, immaterial and spun facts, despite Eric Taube/Alex Jones' Motion to Dismiss, a failed motion that this court denied, having been filed under Fed. R. Civ. P. 12(b)(1), which is clear on Summary Judgement when immaterial matters are entered in motions filed under this Rule.

34. Alex Jones has repeatedly sued me for custody, in the most augmented, outrageous way, in what has been endless motion after motion filed on fraud and perjury that has been even admitted in these cases. This litigation was up to $6 million in 2016. I was only awarded around $7 million in the financial case.

35. There are numerous clear examples of "agreements" I did not sign and of non-enforceable void orders, as I showed the court in my previously submitted affidavit, submitted as my sworn testimony in conjuction with my Motion to Reset or Stay Status Conference, filed on April 1, 2020, attached hereto as Exhibit A.

36. Alex Jones persists, even to this very day, with these actions, represented by his attorneys, Randall Wihite and David Minton, who have represented him since 2014 (and in the financial case of the divorce), having again knowingly presented lies to the 261ˢᵗ District Court today, April 6, 2020.

37. It is my sincere belief that Alex Jones and these attorneys have represented him in what is likely the most unwarrantedly fervent and overtly unethical way of any family case ever in the

6

State of Texas, over these years, so as to preclude me from seeking justice and appellate actions to recoup millions of dollars I was denied by their fraud and collusion with Alex Jones and his parents and agents, as they represented him during the financial case of the divorce, accessed his books, worked with his experts (Mr. Wilhite was himself an expert) and surely were aware of the hidden assets, undivided assets, as they were privy to David Jones' clear admissions of fraud and the fraudulent testimony they orchestrated throughout that case.

38. Attorneys Wilhite and Minton have an agenda that is clear as are their conflicts of interest in this case.

39. As stated in (24)-(26) Mr. Taube provided an attorney to Alex Jones without offering me one and while not telling me that this was a conflict of interest -- this was shortly after he diverted and hid assets in the way indicated in (3) and by jointly representing Alex Jones and his parents, David and Carol Jones (a conflict of interest he likely did not disclose to them) during my marriage.

40. In 2013, while he represented me and while I was married to Alex Jones, Mr. Taube conspired with Alex, David and Carol Jones to secretly form various business entities, including but not limited to PQPR, LLC, JLJR LLC and PQPR Holdings.

41. These secretly formed entities were incepted off of community property and created a highly lucrative supplement businesses into which millions of dollars were moved during the divorce and prior to our property division.

42. Mr. Taube's legal representation of David and Carol Jones as above, and because he continues to represent David and Carol Jones, including in other legal matters, constitutes another conflict of interest.

7

43. In December 2015, David Jones testified that he had participated in the creating the secret businesses entities PQPR, LLC JLJR, LLC and PQPR holdings with full knowledge that he, Ale and Carol Jones as well as Mr. Taube knew that I did not to form these entities.

44. David Jones testified materially and falsely during the financial trial, as he has in the subsequent lawsuits that Alex Jones has filed against me, which is provable by evidence I will provide in my forthcoming objections to Alex Jones' designation of witnesses.

45. David Jones is a dentist with a disciplinary action on his license, he is not an accountant nor even bookkeeper in any way, and he has had significant trouble with the IRS, which Mr. Taube knows.

46. Nonetheless, Mr. Taube offered David Jones' "review" of payments Alex Jones has made to me, his creditor, in the form of a vague and absurd affidavit in support, absent all documentation and calculation and submitted in conjunction with Alex Jones' Motion to Dismiss. This Motion to Dismiss was denied, and I assume that Mr. Taube's Motion would not stump even a first-year attorney. I assuredly cannot even match this greenhorn understanding of the law as a pro se litigant in knowledge nor prowess, but I defeated his motion in open court. This was likely not due to any great knowledge or tactic of mine, but because the Honorable Judge Mott saw he had to act protectively for the law.

47. It took a particular disregard for the law and audacity for Mr. Taube to submit the affidavit of David Jones, this being that of a father that you represent for a son you represent, particularly when you are a decades-old attorney who has represented major corporations in significant litigation. Such has been the choice of attorney Eric Taube. This course of conduct seems just so

8

very disrespectful of the law, considering the Motion to Dismiss' failures and Mr. Taube's response to my Motion to Disqualify.

48.     Of note and relevant to my disqualification motion and this response, David Jones is involved in the Sandy Hook lawsuits possibly as a defendant and because, just prior to the divorce, he was suddenly named "Manager," of Free Speech Systems.

49.  David Jones has testified in the Sandy Hook cases (with the attorneys' conflicts listed below in ___ and also under Eric Taube's legal representation) for Alex Jones.

50.     David Jones has made $500,000/year pay or more in his new, lucrative position as Free Speech System, LLC's "Manager, although he had no experience managing a media company nor had been involved in any significant way with the business.

51.  David Jones was hired immediately prior to my divorce, (after hiding the secret business entities that I would only later discover), at my protest.  He had not been manager of the business, I had. I was primary managing member. Still David Jones was presented by Alex Jones' divorce representation (Randall and David Minton) otherwise. And, David Jones participated more than I did in my own businesses' valuation. So did Alex Jones' cousin, Buckley Hamman, who moved back to Texas just in time to participate in the valuation from Chicago, Illinois.

52.  Even so, $500,000/year must be now chicken scratch to David Jones, who went from broke to "stinking" rich, and who has made millions of dollars from the secretly/conspiratorially formed supplement business entities.

53.  Additionally, just prior to the divorce, Mr. Taube conspired with Alex and David Jones to restructure my business entities.

9

54. Just after the divorce was filed, I received "urgent" emails from our then bookkeeper, Lydia Hernandez (who was also moving millions of dollars into the PQPR, JLJR and etc. entities for Alex Jones) coupled with coercive proclamations of Alex Jones that I needed to sign undisclosed documents regarding this restructure ("or we would lose everything). Alex Jones would not provide the restructure documents, nor would Ms. Hernandez provide me, although I was very much still her employer.

55. In writing and in person, before Lydia Hernandez, Tim Dowling (CPA of Weaver Tidwell, which was the accounting firm we used) and Tim Fruge, I protested having to sign these documents, which I was not allowed to review, on an "immediate" deadline. I was purposeful in doing so and made it very clear that I was signing under duress and coercion absent any knowledge of what I was told I "had to" sign.

56. Mr. Taube represented me up to the year 2015, yet he never provided me with these documents. My then-counsel didn't ever get these documents, despite repeat requests (nor did they get me access to my own quickbook files, which Mr. Wilhite and Mr. Minton would not provide in accessible form.) Mr. Taube did not inform me of the restructure of my own business, request my involvement. He hid this restructure from me, with intention.

57. I audio recorded the audio of my protests at that meeting and during this forced signing of the restructure documents.

58. I learned, when it was too late, that this restructure had turned what had been our cash-based business into a cash-accrual basis. This restructure had been done to "allow"Alex Jones to move the majority of our liquid estate and thereafter profits into "inventory" that was thus unvalued and excluded from the business valuation. The Private Judge notably had no concerns about this,

10

although it is very clear that assets are to remain in place during divorce. This is was Private Judge Alex Jones picked who also gave me around ten percent of my community property in a community property State. And the Promissory Note instead of outright payment I could have invested in my family's future.

59. Mr. Taube profits as the Registered Agent of my previously owned business entities to this date and in representing Alex Jones, Free Speech Systems, and David Jones and Carol Jones as Registered Agent and in litigation, in which his fees should be considered in conjunction with what liquid cash I was rewarded in the divorce. He has, after all, acted in this capacity for at least five years. Discovery will show if he is somehow further connected to these entities.

60. Mr. Taube is well aware of all the above facts (of which I will provide probative evidence) he has chosen to appear to attack me personally using immaterial and spun facts, even during a National Emergency, while Alex Jones litigates against me in State Court, also using his father, David Jones as a witness in that litigation and while he is represented in those matters by attorneys Wilhite and Minton, who Mr. Taube has designated or used as witnesses in this unrelated Involuntary Bankruptcy case.

61. Mr. Taube's decision to do so in this way has forced me to spend countless hours addressing his conflict of interest, as Mr. Minton and Mr. Wilhite litigate against me, as a pro se litigant in this cause and while I was pro se in State court.

62. As additional conflicts of interest, Mr. Taube and members of his firm have represented Alex Jones in the Sandy Hook defamation cases, as has Mr. Wilhite.

63. Attorney Wade Jeffreys, who represented Alex Jones and was a lawyer with Mr. Taube's firm during the divorce, is currently representing Alex Jones in the Sandy Hook defamation cases.

64. Mr. Wilhite has represented Alex Jones in the Sandy Hook defamation cases (and possibly concurrently with Mr. Taube, which discovery will clarify.

65. Alex Jones is also currently represented by Michael Burnett, who defends him in the Sandy Hook Cases. Mr. Burnett is listed as an attorney with David Minton's firm. Mr. Burnett is friends with Mr. Wilhite and offices next door to Mr. Wilhite.

66. Mr. Burnett consulted with me in 2015 and received privileged attorney-client information from me in conference and via email in the Alex Jones had filed against me that year.

67. Mr. Burnett did not disclose his conflict of interest.

68. Jake Gilbreath was my attorney at that time, and he introduced me to Mr. Burnett. We met together and communicated in emails. Mr. Gilbreath did not disclose Mr. Burnett's conflict of interest, nor his own:

69. Mr. Gilbreath was co-counsel with David Minton in 2015, while he represented me, on a matter related to my own case: Mr. Gilbreath and Mr. Minton represented Cory Allen then and continue to represent Mr. Allen up to this present date.

70. Alex Jones knew/knows Cory Allen, who was/is a huge fan of Alex Jones.

71: Cory Allen was best friends with Alex Jones' close friend and producer, Robert Dew.

72. Robert Dew is also (and currently) represented by Mr. Burnett and Mr. Jeffreys in the Sandy Hook defamation defense of Alex Jones and was previously represented by attorneys Wilhite and Taube.

12

73. I was married to Alex Jones when he, to my horror, defamed the Sandy Hook parents and their murdered children with fabricated conspiracy theories. I protested this at the time, asked him to stop, and I have spoken out against his statements for many years.

74. I claim no responsibility for Alex Jones' actions which incur no liability on me, and I have stated that I would try and get Infowars back to unplug it and give these parents recompense for their suffering (although this will never compare to what they have endured.). My attempts to do so were used to construe me as unreasonable and a "bad parent."

75. Knowing Alex Jones as I do, I anticipate that he might attempt to use the "Agreed Divorce Decree," (a void order which I never saw nor signed nor agreed to) to attempt to obligate me to pay for damages which will be should be and will be awarded to the plaintiffs, although I clearly and summarily deny any involvement in these horrible, inexcusable statements and the harassment that they incurred upon the bereaved Sandy Hook parents.

76. Should Alex Jones do this, the conflict of his current representation would additionally present itself clearly, including that of Mr, Taube, Mr. Minton and Mr. Taube.

as would be his intent to just keep me from pursuing the financial history as relayed above and as is clearly his intent. He has no standing to do so, yet he likely will, just to keep me in court and to keep me from justice.

77. As the damages the Sandy Hook plaintiffs should be awarded are ever increased by Alex Jones' litigious nature and the pursuit of meritless appellate action against the Sandy Hook parents, his possible (and likely) future intent to further burden me with frivolous litigation is notable.

78. Alex Jones has been repeatedly sanctioned for the frivolous appellate actions he has taken in the Sandy Hook defamation lawsuits filed against him. He has additionally been sanctioned in those cases for his refusal to adhere to discovery rules. He has even been sanctioned for sending the Sandy Hook parents' counsel child pornography in discovery responses and for offering a million-dollar bounty on opposing counsel's "head.

79. Despite this, Alex Jones remains unapologetic and punitively litigious against the Sandy Hook parents.

80. Alex Jones has stated in recent weeks that he will continue his appellate actions in the Sandy Hook cases on Infowars.com. He has done this while disparaging the Honorable Judge Jenkins of the 261ˢᵗ District Court of Travis County, Texas, even while he is attempting to jade this court against me for meritorious and necessary State and Federal actions I took regarding the history of this case, which were my right and duty to pursue, according to the law and Federal and State Constitutions.

81. Regarding Mr. Taube's brazen misrepresentations regarding his legal representation of me, there is abundant evidence that I will present at the upcoming hearing and additionally provide, this week, via supplement.


82. With regards to Mr. Taube's Response to Motion to Disqualify, entered into the case's record on March 22, 2020:

83. Regarding B (5), I will prove that Mr. Taube's was clearly not a "brief and discrete relationship with me," but rather trust and ethics-bound relationship that was privileged, legal,

occurred over a period of at least seven years and remained ongoing until 2015 (which is five years later than the "ten years ago" he indicates in his response).

84. Regardless of duration or distance of time, Mr. Taube represented me, and this disqualifies Mr. Taube from this case, which is substantially related to the question of the Promissory Note, of my business interests and to his legal representation of me.

85. Regarding B (6), I have outlined my business, legal, and personal relationship with Mr. Taube above, which I will prove and towards which there is abundant evidence.

86. Regarding B (6), I have not pled this involuntary Bankruptcy Petition on anything related to my marriage to Alex Jones but as a debt Alex Jones owes me, on which he is in default. It is a debt. Marriage is irrelevant. A debt is a debt. This debt Alex Jones owes me is partially based on my very disparate financial award of our businesses' value. Mr. Taube admits representing me in business matters in his response, as he did in open court. These matters are related, as are the entity he hid from me, his actions in assisting the diversion of my community property and etc.

87. Regarding B (6), Mr. Taube's firm represented Alex Jones in our divorce, and Mr. Taube neither terminated his relationship with me nor disclosed this conflict of interest, which I did not waive.

88. Regarding B (6), Mr. Taube fails to disclose the other legal matters in which he represented me, some of which I have outlined above and other that I will provide, in court and in supplemental evidence. Mr. Taube nonetheless admits that he represented me in a pool contract. This was a very expensive pool my then- husband demanded be built. It ended up costing over $700,000. This contract was incepted in 2013, not "over ten years ago." The pool contract was a

15

contract between a pool company and me and my then-husband, Alex Jones, and Mr. Taube represented us both. I was ordered to pay for the pool in the divorce and for the subsequent litigation for the pool company's shoddy work on this outrageous and flawed luxury pool I have to still maintain at tremendous expense.

89. Regarding B (6), Mr. Taube was paid by my business, Free Speech Systems, LLC, on company checks that I reviewed and signed. I was 51% Managing Member of Free Speech Systems, LLC. Mr. Taube was retained and paid by me personally and by my business. Mr. Taube's statement is provably untrue.

90. Regarding B (7) Mr. Taube admits referring me to Attorney Don Carnes, who worked then (and now) in partnership with Attorney H. Allen Hill. Mr. Hill secretly created Austin Shiprock Publishing, LLC to my exclusion, during my marriage, although his partner was our personal estate planner and executed wills and powers of attorney (of which I was beneficiary and with me having, then, Alex Jones' Power of Attorney).

91. Despite repeat requests, Mr. Hill will not provide me with the paperwork regarding this entity and now: Mr. Hill like Mr. Taube, insists, in what appears to be parallel, if not coordinated statements, that "he did not represent me" at that time. Mr. Hill additionally represented me in Real Estate deals and was paid by my community property in all matters during my marriage. Interestingly, this is the one business formed apart from Mr. Taube's business representation, which brings many concerns to light, as does Mr. Taube's current position as Registered Agent for this undisclosed asset.

92. Regarding B (8) I summarily deny Mr. Taube's statement: I trusted Mr. Taube. Mr. Taube represented me, and he might currently represent me as outlined above and regarding ongoing

16

matters. Mr. Taube breached his fiduciary duty, a duty evident from 2007 -2015, at least. He breached this duty then. He is currently breaching this duty.

93. Regarding C (9) Motions to disqualify are substantive motions. Therefore, they are decided under Federal Law. When reviewing the disqualification of an attorney, we must "consider the motion governed by the ethical rules announced by the national legal profession in the light of the public interest and the litigant's rights." Id. The norms embodied in the Model Rules and the Model Code are relevant to our inquiry, "as the national standards utilized by this circuit in ruling on disqualification motions." American Airlines, 972 F.2d at 610. Additionally, consideration of the Texas Rules is also necessary, because they govern attorneys practicing in Texas generally, and because the Western District Rules contain language virtually identical to the state canon:

> a) Acceptance of Employment. An attorney shall not accept employment in contemplated or pending litigation if he knows, or if it is obvious, that he or an attorney in his firm ought to be called as a witness on behalf of the client, except that the attorney may undertake the employment and he or an attorney in his firm may testify:
>
> (1)     if the testimony will relate solely to an uncontested matter.
>
> (2)     if the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.
>
> (3)     if the testimony will relate solely to the nature and value of legal services rendered in the case by the attorney or his firm to the client.

17

(4)     as to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the attorney or his firm as counsel in the particular case.

(b)     Withdrawal from Representation. If, after undertaking employment in contemplated or pending litigation, an attorney learns or it is obvious that he or an attorney in his firm ought to be called as a witness on behalf of the client, the attorney and his firm shall withdraw from the conduct of the trial and continued representation, unless one of the exceptions listed in (a) is applicable.

(c)     Testimony Prejudicial to Client. If, after undertaking employment in contemplated or pending litigation, an attorney learns or it is obvious that he or an attorney in his firm may be called as a witness other than on behalf of his client, the attorney and his firm may continue he representation until it is apparent that his testimony is or may be prejudicial to the client.

94. Regarding C (10) I have stated matters that I can prove and will meet the burden of proof to disqualify attorney Eric Taube. His legal representation of me was substantive, which he knows, and which I will prove.

95. Regarding C (11) dilatory tactics being, as they should, of the court's strong consideration, attorney Eric Taube's involvement in this case should be considered strongly as a dilatory tactic.

96. Towards this, Mr. Taube he should heed the seriousness of taking my disqualification motion lightly and his purposeful misrepresentations to this court. Mr. Taube's agenda transcends the horrible personal attacks he proffered in collusion with attorneys who are additionally conflicted from this matter. They bely his agenda of self-protection for his

18

complicity in very serious acts he has willingly undertaken to hide my property and estate currently and while he represented me.

97. Regarding C (12), this is clearly not an unrelated matter nor is Mr. Taube in any way within the bounds of the law or the ethics he quotes.

98. Regarding D (13), if ever there was a clearer prima facie basis for disqualification, I cannot imagine, but I'm a pro se litigant, and my knowledge of the law is admittedly cursory.

98. To further delineate, Mr. Taube represented me in the ways he represented to the court, in business formation in 2007, and as ongoing business counsel of entities including but not limited to Magnolia Holdings, LP, Magnolia Management, LLC, Free Speech Systems, LLC, PrisonPlanet,TV, LLC, Infowars, LLC, Jones Report, LLC, JLJR, LLC, PLIR, LLC, PQPR Holdings, Emric Productions, LLC, and he represented me in undisclosed business entities, which I have recently discovered, including but not limited to Austin Shiprock Publishing, LLC.

99. Mr. Taube represented me when he restructured these businesses in 2013. He represented me as these entities' Registered Agent from 2007-2015.

100. Mr. Taube represented my businesses and Mr Taube and/or his firm created contracts for my business, such as non-disclosure agreements and contracts for director/production management services (in 2010), of distribution and other matters, in the review and creation of business contracts, and etc.

101. Mr. Taube represented me in cases including, but not limited to Case # 7:09CR00032, which was a matter related to Free Speech Systems, LLC and regarding my then-husband, Alex Jones.

19

102. Mr. Taube represented me in the legal review and maintenance of entities Sparkle Creek Management, LLC, Sparkle 5 Partnership, LP and via referral to Don Carnes for personal estate and by his relationship to Don Carnes to H. Allen Hill, who incepted the undisclosed asset, Austin Shiprock Publishing, LLC.

103. Mr. Taube represented me by referring me to Elizabeth Schurig with whom he worked to create a complicated business structure in 2007, about which he advised me and my then-husband to create and in which he participated in meetings. Mr. Taube was cced on communications and the creation of our business entities' formation, as well as in the maintainence/compliance of these business entities from 2007-2015.

103. Mr Taube and/or his firm created contracts for my business, such as non-disclosure agreements and contracts for director/production management services (in 2010), in copyright infringement litigation (due to my then-husband, Alex Jones' unilateral and unknown decision to violate copyright law) filed against him by Righthaven in 2010. He communicated with my staff and with my bookkeeper for years, on business matters on which I was involved.

104. Mr. Taube was retained by me personally for estate planning referral and on Trust/Estate planning review, on a very expensive pool contract.

105. Mr. Taube was paid by me personally and by my business, which paid his retainer and legal fees on checks I authorized and signed.

106. Mr. Taube represented me in 2013, when he restructured multiple business entities I owned, of which I was primary managing member.

107. Mr. Taube has conflicts of interest with attorneys Minton and Wilhite and by means of his representation of Alex Jones and his parents in a matter that I opposed, while he represented me.

20

108. Mr. Taube's response is vague, misleading, misstates the truth, and fails to prove his assertions and to warrant the denial of my Motion to Disqualify.

## **CONCLUSION AND PRAYER**

WHEREFORE, Respondent Eric Taube should be required to offer a Burden of Proof, under Rule 301 of the Federal Rules of Evidence, which states:

> "In a civil case, unless a federal statute or these rules provide otherwise, the party against whom a presumption is directed has the burden of producing evidence to rebut the presumption."

Creditor respectfully requests that Mr. Taube be disqualified, and that she receive such other and further relief to which she may show herself entitled.

Respectfully submitted,

Monday,
06 April 2020

Kelly R. Jones
Crediting Petitioner, pro se
11601 Hwy 290 W., Suite A101-307
Austin, Texas 78737
Designated Legal Ph# 888-995-3559
Dedicated Legal Service Email: kelly@violetkelly.com

## CERTIFICATE OF SERVICE

I, Creditor/Petitioner Kelly Jones, pro se, hereby certify under penalty of perjury that a final copy of this Response in Opposition was filed by email to this Honorable Court under the United States Bankruptcy Court, Western District of Texas, Austin pursuant to the Interim Standing Rules via email to prose@txwb.uscourts.gov and to Debtor, to be filed on this Monday, April 6, 2020 and to Alex Jones' attorney of record, Eric Taube via email on this Monday, April 6, 2020.

Kelly Jones
Creditor/Petitioner, Pro Se

*Crediting Petitioner's Response in Opposition To*
*Attorney Eric Taube's Response to Creditor's Motion To Disqualify*

**IN THE UNITED STATES
BANKRUPTCY COURT FOR
THE WESTERN DISTRICT OF
TEXAS AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| ALEXANDER EMRIC JONES, | § | CASE NO. 20-10118-hcm |
| Alleged Debtor. | § | (Involuntary Chapter 11) |

<u>**ORDER SETTING MOTION TO STAY OR RESET STATUS
HEARING**</u>

On April 6, 2020 Kelly Jones, Creditor/Petitioner, pro se, filed

Crediting Petitioner's Response in Opposition to Attorney Eric Taube's

Response to Creditor's Motion to Disqualify.

**IT IS THEREFORE ORDERED AND NOTICE IS HEREBY
GIVEN AS FOLLOWS:**

The Court finds that there is good cause to disqualify Eric Taube

as Debtor Alex Jones' attorney of record in this case.

######

<u>EXHIBIT A</u>
CREDITING PETITITIONER'S
MOTION TO RESET OR STAY
STATUS CONFERENCE
FILED APRIL 1, 2020

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN

| | | |
|---|---|---|
| In re: | § | Case No.: 20-10118-hcm |
| | § | |
| Alexander Emric Jones, | § | Judge H. Christopher Mott |
| | § | |
| Debtor. | § | Chapter 11 (Involuntary) |

## MOTION TO RESET OR STAY STATUS CONFERENCE

Creditor Kelly Jones, pro se, (herein after, "I") respectfully moves the court
to reset the March 30, 2020 hearing, under Rule 16 (b) 4, Federal Rules of
Civil Procedure, for good cause.

1.  Emergency matters regarding my children's safety during this National
Emergency of COVID-19/Coronavirus caused me to miss the March 30, 2020
Status Conference.

2.  As emergency matters at hand have required my complete attention to
protect my children during this pandemic, while seeking protection from
Federal Crime, I have no update for this honorable court at this time, nor did
I at the time of the March 30, 2020 status hearing.

2.  These emergency matters are outlined in my affidavit, attached as *Exhibit
A.*

3.  The attached affidavit also includes my sworn testimony about what I
believe to be significant Federal Crimes related to Alex Jones' exhibits, of
which I respectfully request this honorable court take note.

4.  WHEREFORE and ACCORDINGLY, I pray this Honorable Court reset
or stay the March 30, 2020 Status Hearing, for good cause.

Signed, Served, and Executed in Austin, Texas, on this Wednesday, the 1st day of April, 2020.

Respectfully submitted,

Kelly R. Jones
Pro Se Creditor
11601 Hwy 290 W., Suite A101-307
Austin, Texas 78737
Designated Legal Ph# 888-995-3559

## Certificate of Service

I, as Petitioning Creditor, hereby certify under penalty of perjury that I have served a true and correct copy of this Motion to Reset or Stay Status Hearing to debtor, Alex Jones via his Attorney of Record, Eric Taube, via email on this Wendesday, April 1, 2020:

Kelly R. Jones
Pro Se Creditor
11601 Hwy 290 W., Suite A101-307
Austin, Texas 78737
Designated Legal Ph# 888-995-3559

# EXHIBIT A:
## AFFIDAVIT OF
## KELLY JONES
### April 1, 2020

STATE OF TEXAS                                                    §
                                                                 §
                                                                 §
                                                                 §
COUNTY OF TRAVIS                                                  §

## AFFIDAVIT

My name is Kelly Jones, I am over 18 years of age and of sound mind. I am personally

acquainted with the facts alleged herein, and, if called as a witness, could testify competently

thereto.

I am obligated by duty to protect my children from endangerment during this National Emergency,

the COVID-19 coronavirus pandemic.

My attention from this cause and others and every aspect of my time and life has been consumed

with seeking protections for my family.

My ex-husband, Alex Jones, who has current possession of our children, is not heeding State and

Federal emergency directives during this National Emergency.

Alex Jones has disputed the need for social distancing, is travelling unnecessarily to and from

work, while even major networks and national talent are broadcasting from home.  At his

Infowars.com studios, Alex Jones shares a microphone (viruses remain on the surfaces of

microphones for as much as 36 hours, according to the CDC) with his staff, who he has encouraged

to defy stay at home Orders and paid to harass the Austin Police Department during the coronavirus outbreak.

On Friday, March 27th 2020, google removed Alex Jones' Android app from its Play Store, just after Alex Jones, in a broadcast, "disputed the need for social distancing, shelter in place, and quarantine efforts meant to slow the spread of the novel coronavirus." (*Wired Magazine*, March 27, 2020, attached).

On March 12, 2020 the New York State Office of the Attorney General sent Alex Jones a formal Cease and Desist notice (attached), stating:

*"The New York State Office of the Attorney General ("OAG") is extremely concerned by your representations during the March 7, 2020 screening of The Alex Jones Show about the efficacy of certain products for sale on your website (InfowarsStore.com) that you assert will cure or prevent the 2019 novel coronavirus, including DNA Force Plus supplements, Silversol products and Superblue toothpaste, and advising Alex Jones to immediately cease and desist.*

*The 2019 novel coronavirus (COVID-19) poses serious consequences to public health, and consumers are concerned as to how they can best protect themselves and their families. Your representations may mislead consumers as to the effectiveness of the above-named products in protecting against the current outbreak. Both the Centers for Disease Control and Prevention ("CDC") and the World Health Organization ("WHO") have stated that there is no specific*

*medicine to prevent or treat this disease. Therefore, any misrepresentation that the above-named products are effective at combatting and/or treating COVID-19 violates New York law.*

*You are hereby advised to immediately cease and desist from making misleading claims as they violate New York's consumer protection statutes, Executive Law § 63(12) and General Business Law Article 22-A §§ 349 and 350, which prohibit fraudulent and deceptive business practices and false advertising."*

Alex Jones believes the coronavirus pandemic is a means to control Americans, and he has threatened to sue President Trump over actions he has taken to safeguard Americans. He believes that coronavirus is an engineered bioweapon.

He often leaves our children are with people he will not disclose, or with people who I know not to be safe with the children. These people come and go from his home, and I have no understanding, nor will Alex Jones provide me an understanding, of these people's health, possible exposure, nor safety precautions they are or are not taking.

Even in times of non-emergency, Alex Jones has refused to follow our children's pediatrician's recommendations, which resulted in their dismissal from their life-long pediatrician's practice, as well as prolonged, severe, preventable respiratory disease (Pertussis/Whooping cough) in the last ten months.

He would not follow another pediatrician's recommendations for medically necessary care in the month of February of 2020, and refused to acknowledge this recommendation, which was written, as being real.

Additionally, Alex Jones has been recently arrested for DWI, tested positive for binge alcohol drinking. During this arrest, his wife, Erika Wulff, reported physical domestic violence.

Erika Wulff, herself has recently been arrested for DWI and was reported by Alex Jones' private investigator to be suicidal at the time of her arrest.

These matters were set to be heard in Travis County District Court but have been delayed by the pandemic, until April 6, 2020. Until that hearing, I am entirely occupied by doing all I can to assure my children's protection, including by preparing for that hearing, in which I was Pro Se until recent weeks. I am their mom, not just their legal protector, and I am highly concerned for them.

As all Americans during this National Emergency, I have valid worries and concern for other family. My 87-year-old father, a cancer and heart attack survivor, has many health complications, including reduced mobility. My 81-year-old mother, also a cancer survivor is currently undergoing chemo for myelodysplastic syndrome, an immunodeficiency of the blood. I am doing what I can to help them.

My sister is a pediatrician and my brother in law is also a physician. My brother is a social worker and my sister in law is a nurse.

Due to the situation at hand, my necessary involvement in legal and parental oversight of my children, preoccupation over this and my other family, which is truly impacting me, I missed yesterday's hearing.

Even as I deal as best I can with these serious matters at hand, as a mother, who actively has valid concerns about coronavirus indifference/exposure to my children by Alex Jones, Alex Jones and his counsel have maintained a vigorous legal and personal assault on me, my person and my motherhood, while in full understanding I am under these rigors.

This includes, particularly the submission via my previous counsel (disqualified by this conflict of interest) of "exhibits," that are clearly meant to misconstrue my person and generate bias outside the scope of this cause, which I'm assured the Court will not undertake.

As these exhibits constitute another incident of fraud in the years-long purposeful course of conduct to mislead the State and Federal Judiciary (or, to Fraud the Court), and, as these exhibits themselves evidence the history of fraud/racketeering and injustice in the divorce, I feel it necessary to bring the facts below to the Court's attention, for my and my family's safety.

I am working on my response to Alex Jones' Response to my Motion to Disqualify Debtor's Attorney, which will include exhibits to corroborate what must likely seem unbelievable and shocking for me to assert.

I understand the significance and implications of alleging that Alex Jones and his counsel have engaged in criminal activity, and I would not do so without evidence nor understanding of the seriousness of these allegations. I do not say this lightly, nor without evidence, and crime is a matter of every court's concerns.

I ask the Court's mercy and any assistance in finally brining this matter to true investigation by the Federal Bureau of Investigations or any law enforcement agency, for judicial economy in this matter and so that justice may be served.

As countermanding Alex Jones and his counsel's intentional fraud has required my response (which further takes from my attention to family and duty), I ask that this honorable court please take note, regarding Alex Jones' Exhibits:

## FORGERY:

Mr. Jones' exhibits include what I believe to be a clearly forged document that contain a signature that I believe is not mine, Alex Jones Exhibit 13.

1. I do not form my "K" or the following letters in this pattern.

2. I was married at that time and this is signed with my maiden name, "signature." I did not sign "Nichols" but "Jones" on documents, as I had been doing for five years at the time this document was signed.

3. I have no recollection of this document nor the many other documents that I have which seem to me to be very clearly forged, which I believe a criminal/FBI analyst will easily determine to be forged.

## FRAUDULENT ASSERTION OF AGREEMENT ON UNSIGNED DOCUMENTS: AND DOCUMENTS UNLAWFULLY OBTAINED AND ENTERED; AND DOCUMENTS ENTERED WITH KNOWLEDGE THAT I DID NOT AGREE TO THEM:

1. CONFIDENTIALITY AGREEMENT (Pages 142-158 of Alex Jones' Exhibit 20):

    A.  I did not sign this "Confidentiality Agreement.

    B.  I will submit exhibits to this honorable court inner attorney of communications between Alex's counsel and my previous representation where I clearly refused to agree to this document as exhibits.

    C.  These exhibits will demonstrate that Alex Jones' attorney, Randall Wilhite, as well as mine, clearly knew I did not agree to this Confidentiality Agreement.

    D.  Mr. Wills did not have my power of attorney, and he had no authority to sign this document.  He did so with clear understanding that I did not agree to this document.

2. "AGREED" DECREE OF DIVORCE (Alex Jones Exhibit 20)

This is a void order: I did not sign it. I was not noticed of the hearing at which it was entered. I did not know this document existed until weeks after it was entered:

A. I neither saw, signed, nor agreed to this document, nor was I aware of its entry until after the time to appeal it had expired.

B. I was not noticed of the document nor hearing entering it.

C. I did not authorize Mr. Gilbreath to sign this document. Mr. Gilbreath did not have my Power of Attorney and had no authority to sign this document, which is void.

D. Exhibits I will submit to this court will show, as I am able without violating privilege, which is mine and which I do not now, nor ever have, nor ever will, in any way, break:

a. Mr. Gilbreath signed this document while advising me to move for a new trial. He signed this document also after referring me to another attorney who I retained, at great cost, to pursue a Bill of Review. (I swear hereby and below to this fact, and do not give up privilege.)

b. Mr. Gilbreath was co-counsel with Mr. Jones' attorney David Minton at the time he signed this document (Mr. Minton representing Mr. Jones), a conflict of interest he did not disclose.

c. At the time this "decree" was entered, Mr. Gilbreath and Mr. Minton jointly represented a person known by Alex Jones, very close friends with Alex Jones' top producer, Robert Dew. Mr. Taube has represented Robert Dew in the Sandy Hook cases.

d. Also, regarding conflicts of interest, Mr. Gilbreath introduced me to attorney Michael Burnett, who is currently representing Alex Jones in the Sandy Hook Travis County case. As I result, I shared privileged information with Mr. Burnett, who is also frequently co-counsel with David Minton and sometimes listed as an attorney in his firm.

## NON-EXHAUSTIVE  HISTORY OF "AGREEMENTS, INCLUDING COERCION, CONSPIRACY AND UNLAWFULLY INCEPTED ORDERS

1. This "Agreed Decree" was incepted, apparently, by Mr. Jones' counsel off the back of a court-recorded, coerced "Mediated Settlement Agreement, " which was never written up and which I testified as being entered under coercion, during a private, sealed hearing at the W Hotel. (Mr. Gilbreath was the "mediator," at this event, and told me I had to say that I agreed to this on the record. When I did, I stated that I was forced to accept.

2. The "Decree," particularly was co-written by the "expert" that Mr. Jones hand-picked in the history of this case, Dr. Allison Wilcox, who I later learned was involved after her appointment had expired in co-writing the so-called Decree (a void order, on its face).

3. In violation of the Texas Administrative Code, Dr. Wilcox intentionally destroyed her records. Mr. Wilhite/Mr. Minton and she (and likely Mr. Gilbert) incepted this document which is unlawful on its face as it clearly violates the Texas Administrative Code regarding her psychologist involvement and the Rules of the Texas Board of Examiners of Psychologists. It is, as such, is further void.

4. Dr. Wilcox and other experts admitted in court testimony having falsely reported and having falsely testified, materially, (aggravated perjury) about hard evidence in hearings and during the Jury trial of 2017, in which I prevailed, which proved this perjury by previous testimony, reports and exhibits.

### UNETHICAL ATTEMPT TO BIAS THIS COURT, BY FRAUDULENTLY PRESENTING EXHIBITS OF DOCUMENTS AND ORDERS INCEPTED UNLAWFULLY AND BY FRAUD:

1. Alex Jones has submitted documents to this Honorable Court that have no relevance to this matter, so as to impeach my person and reasons for filing this cause, and in attempt to bias the court.

2. These documents, conspiratorially written and entered, construe me with purpose, as a terrible, mentally ill person.

The court should note that all of the family court orders regarding custody, which are irrelevant to this matter of Involuntary Bankruptcy, were written by Alex Jones' attorneys, as instruments for that future purpose and so as to have legal orders to present to other courts, doctors, and my children's schools, to cause them to be biased against me.

3. The history of this case is one of abuse of official authority, undue influence and color of law actions, which I cannot present in its entirety, but to which I have pled the Federal Western District Court of Texas as well as the Texas Courts for relief.

In those actions I have taken, I have not been able to appeal the current judicial posture/rulings on my pleadings, due to the rigors always being forced on me through Alex Jones' incessant litigation.

4. This history includes that, despite the jury's decision, the presiding Judge, Orlinda Naranjo, exacted, effectively, a Judgement Non-Withstanding the Verdict (JNOV), without rendering a JNOV.

5. Judge Naranjo did this by holding hearings on temporary orders after a jury trial, including conferences she should not lawfully hold and would not allow to be recorded by court reporter nor to have an attorney present.

6. Judge Naranjo did this after having controlled all evidence in Mr. Jones' favor outside reason and law in previous proceedings, including the Jury Trial (including footage of him drinking and smoking pot, in a family case, which is still relevant, as above).

7. Naranjo's granted Alex Jones' Motion in Limine to omit Alex Jones' anti-vaccination/medically paranoid state. Even after the Jury named me Primary Parent and me and Alex Jones Joint Managing Conservators, Judge Naranjo, granted Alex Jones the "exclusive right to vaccinate," without motion and having kept this decision from the Jury's purview unlawfully.

8. The "exclusive right to vaccinate," is not a separate or specific medical conservatorship right in the State of Texas. Conservatorship in Texas Jury trials is only the Jury's to decide.

9. Alex Jones' refusal to vaccinate the children caused them true injury, severe illness, and has left them endangered, including now, during this pandemic, if a vaccination be developed to prevent the coronavirus.

10. In addition to numerous additional unlawful acts throughout the time she presided, for years, over the Travis County custody lawsuits Alex Jones filed against me, Judge Naranjo entered the present Temporary Orders in the child custody case at an improperly/non-noticed hearing at which I was not allowed to have representation.

These orders were entered as this unconstitutional proceeding, absent all Due Process, shortly after Alex Jones' attorneys, David Minton and Randall Wilhite donated $6500 to Judge Naranjo's retirement Fellowship.

11. Judge Naranjo entered these orders of Mr. Jones' latest lawsuit against me, having allowed Mr. Jones to sue me again for child custody less than six months after the Final Orders were entered from the Jury trial. Modifications lawsuits cannot be filed in Texas until after year has passed since Final Orders' entry and not without material and significant changes. The matters Alex Jones pled were not material or significant and included a false "change" that Alex Jones later recanted.

12. Judge Naranjo took eight months to enter Final Orders after this Jury Trial, during which time she left Alex Jones in primary possession, allocating me as little as two hours a week with my children, and leaving him with primary conservatorship and possession, which had never been rendered (we were always joint managing conservators with equal rights.)

13. Judge Naranjo (who has acted unlawful injustices on others, including in cases on which Mr. Minton was counsel, which I can provide criminal investigators) allowed Alex Jones to sue me less than six months after the Final Orders were entered, while I was pro se and on appeal, after I had pled for Interim Fees due to financial devastation from the lawsuits that Alex Jones filed against me.

14. After the Jury Trial at which I prevailed and was named Primary Parent, which was the culmination of millions of dollars of litigation, I never was awarded attorney fees, nor child support, other than partial medical reimbursement, which Alex Jones has never paid.

15. When Alex Jones sued me again for child custody, he had less than two weeks earlier reinvigorated the tort cases (Intentional Infliction of Emotional Distress and Defamation, which Judge Naranjo had bifurcated from the previous Jury trial custody case Alex Jones filed and in which I prevailed.

16. When Judge Naranjo allowed Alex Jones to sue me again, unsworn, on already judicated matters, with no material changes, I was pro se in multiple tort case and in a State appeal. I was, thus, in multiple parallel cases on the same matter and pro se in two matters.

17. Judge Naranjo ignored the law and allowed the inception of this unsworn Modification (a requirement of Texas Petitions), as she ruled always, with clear purpose and bias for Alex Jones, allowing him to file lawsuit after lawsuit and motion after motion against me, including post-jury motions in which he interfered with Jurors.

18. Judge Naranjo's bias has included, even, ignoring Alex Jones' and his attorney, Randall Wilhite's clear violation of the Court Seal, including Mr. Wilhite's brazen

engagement in egregious violation of the Texas Disciplinary Rules of Professional Conduct, 3.07, Trial Publicity:

Alex Jones and Mr. Wilhite lied about me and the history of the child custody case in Infowars.com broadcasts to millions of Alex Jones' fans, after which I was harassed and threatened by these people, including "gas chamber" threats. Alex Jones and his attorneys not only lied about me, they broadcasted sealed court documents on which you could read my home (and the children's) address and the location and time of my activities

Alex Jones is known for having a crazed audience who harasses and threatens such people as the bereaved Sandy Hook parents, and who have even gone into businesses with guns off his later recanted conspiracy theories. He and his attorney, Randall Wilhite lauded the Judge and told her how to rule, which she did. This ruling was not the standard ruling, in any way, for Primary Parent in the State of Texas.

Is this not undue influence, or could this not be construed to be coercion?

The above are just some of the many fraudulent/conspiratorially enacted things that culminated in my loss of tens of millions of dollars and of my children and their consortium for years.

I believe, very strongly, that Mr. Jones has kept up the family litigation to simply keep me from being able to pursue lawful actions and criminal investigations into the history of this financial trail of the divorce case that culminated in such a disparate financial award:

I lost tens of millions of dollars in the community property State of Texas due to provable fraud during the bifurcated financial trial of the divorce, including aggravated perjury, which I can prove with hard evidence, by the record, with witnesses and work product.

As a result of these criminal activities, I am still fighting for my children's very life and limb, during a pandemic. While our nation joins together, I have been forced to still litigate and seek their protection, in defiance of their safety and of all standards of the best interests of children.

I have been forced to pursue this Involuntary Bankruptcy cause to pay for the litigation that I must still sustain, because Mr. Jones owes me money that he will not pay. He has used this case, in which he has likely already paid many tens of thousands of dollars to attorneys, to attack my person and to threaten me with fees, shame and further financial devastation. This is money he owes me and could pay, yet he refuses.

The money he withheld, despite an acceleration clause in the Promissory Note, was for a judgement Judge Naranjo rendered on me from the first modification lawsuit he filed against me for his expert's fees. These were his experts, who testified for him. I won a Jury and yet was ordered to pay his experts, while my request for attorney fees and child support, as well as interim attorney fees were summarily denied.

I did not intend to miss the hearing. I do not take the court's time lightly, and it was not my intention to miss the hearing. I am very sincerely sorry that I did.

I'm logically concerned that Alex Jones will use my having missed it to further attack me or even to move to dismiss this cause. I will make extra effort to be attentive to future hearing settings, and I will be present.

I seek justice: I need the money Alex Jones owes me, on which he has defaulted, to pay my legal fees in the latest child custody lawsuit he has filed against me.

I was ordered to become a creditor to Alex Jones, after I lost almost everything in my divorce, including all future earnings on a business of which I was Primary Managing Member.

I was ordered to issue a Promissory Note, as partial payment of my highly disparate financial "award," because Alex Jones testified that he could not pay me outright.

Alex Jones has purchased property worth at least $7,000,000 since the divorce, including a $2.3 million dollar house the year the divorce was finalized. Texas Monthly reported he makes as much as $25,000,000 a year.

Had I been present at yesterday's hearing, the status I would have to the court that I have been entirely focused on my duty to protect my children, that my capacity to do so is limited by my financial stressors and my inability to pay for representation in Alex's latest lawsuit against me (the child custody lawsuit), and that I am additionally stressed, as are many other Americans, by

concerns for my children's safety and the safety of their grandparents and relatives due to this pandemic.

I further would have tried to move, by verbal motion, to extend time or stay the case, including the time to answer Alex Jones' Response to my Motion to Disqualify attorney Eric Taube.

The stress of constantly countermanding fraudulent documents and absurd, false allegations, absent all relief, including from Mr. Taube's brazen misrepresentation of his past representation of me (which I can show to be false by the exhibits I will submit) preclude me from being as proactive and attentive as I want to be to this cause. They also impede me in the lawsuit Alex Jones filed against me, which is why I've pursued this cause, which has been so I can have my own money to pay to new attorneys to protect my children in Alex Jones' latest lawsuit against me.

The children's situation is dire.

This is a time of great pressure for all of us, and I know that the courts and government are doing everything that they can to protect and support Americans during this pandemic.

I hope that this will include the court giving me grace for missing yesterday's hearing and reset or stay that hearing and extend/stay time in this cause.

I also hope the court will forward this affidavit to any Federal Agency, including the FBI to

which I swear under penalty of perjury, understanding the seriousness of my statements and

maintaining extensive probative evidence regarding what I believe to be many State and Federal

crimes that have occurred.

### JURAT

My name is Kelly Jones. My date of birth is July 2, 1968. My home address is purposefully omitted
due to the Court's redaction orders. My mailing address is 11601 Hwy 290 W, Suite A101, Austin,
Texas 78737. I declare under penalty of perjury that every statement in the foregoing affidavit is
within my personal knowledge and is true and correct. Executed in Travis County, Texas on this
Wednesday, April 1, 2020.

_____
Kelly Jones

LILY HAY NEWMAN     **SECURITY**    03.27.2020 12:07 PM

# Google Bans Infowars Android App Over Coronavirus Claims

**Apple kicked Alex Jones out of the App Store in 2018. The Google Play Store has finally followed suit.**



Long after other platforms did the same, Google Play Store has taken down Alex Jones's Infowars app.    PHOTOGRAPH: TOM WILLIAMS/ROLL CALL/GETTY IMAGES

ON FRIDAY, GOOGLE removed the Infowars Android app from its Play Store, extinguishing one of the last mainstream strongholds of infamous conspiracy theorist Alex Jones. The takedown comes on the heels of a video, posted in the Infowars app last week and viewed by WIRED, in which Jones disputed the need for social distancing, shelter in place, and quarantine efforts meant to slow the spread of the novel coronavirus.

Google confirmed to WIRED that it removed the app on Friday. The app had more than 100,000 downloads according to Google Play's published metrics, and was rated "E10+," meaning safe for all users 10 and older. The Infowars app sold

products like supplements and protein powder, broadcast *The Alex Jones Show* live, and posted videos and articles from Jones and others.

"Now more than ever, combating misinformation on the Play Store is a top priority for the team," a Google spokesperson told WIRED. "When we find apps that violate Play policy by distributing misleading or harmful information, we remove them from the store."

Alex Jones and Infowars did not immediately respond to a request for comment. In the video in question, Jones said that "everybody dies under the new world order except maybe one tenth of one percent that believe they're going to merge with machines and have made deals with this inter-dimensional thing that gave them all the technology ... You can't make a deal with these aliens, OK, that the Bible tells you about and ever get off the planet." Elsewhere in the video, Jones claims that natural antivirals exist to treat the novel coronavirus.

Google is far from the first tech giant to block or ban Infowars content. In fact, Google-owned YouTube suspended The Alex Jones Channel in August 2018, after mounting pressure from critics that platforms should enforce their anti-hate speech policies. Facebook took action against several Jones-operated pages that same day, as did Twitter with Infowars-related accounts the next month. Facebook instituted a full ban of Alex Jones and Infowars content across all of its platforms in May 2019. Apple's iOS App Store, Google Play's main competitor, already banned the Infowars app more than a year ago during the late summer 2018 blitz.

In the wake of all the mainstream bans, Jones and his supporters have repeatedly maintained that blocking Infowars and Jones' content only spreads it farther and makes it more popular. But research indicates that so-called "deplatforming" actions do effectively reduce the spread of hate speech, misinformation, and conspiracy theories. The bigger question is why Google waited so long to take action against Infowars given that its peer organizations did so a year and a half ago.

Tech services and social networks have long touted their role as defenders of free speech. But rampant abuse, misinformation, and coordinated disinformation campaigns carried out by nation states on the platforms have brought the industry to a new understanding in recent years of its necessary role in policing violent and dangerous content. The industry has also specifically moved to crack down on misinformation about the Covid-19 pandemic in the last few weeks. A joint statement from Facebook, Google, LinkedIn, Microsoft, Reddit, Twitter, and YouTube last week said that the companies are pledging to help "millions of people stay connected while also jointly combating fraud and misinformation about the virus."

Jones has received other public pushback as well for his claims about the spread and treatment of Covid-19. Earlier this month, New York attorney general Letitia James sent him a cease and desist notice for saying in videos and on the Infowars website that his DNA Force Plus supplements, Superblue toothpaste, and SilverSol gargle could protect against or treat the novel Coronavirus.

"As the coronavirus continues to pose serious risks to public health, Alex Jones has spewed outright lies and has profited off of New Yorkers' anxieties," attorney general James said in a statement. "Mr. Jones' public platform has not only given him a microphone to shout inflammatory rhetoric, but his latest mistruths are incredibly dangerous and pose a serious threat to the public health of New Yorkers and individuals across the nation."

Seemingly in response, Infowars now lists a disclaimer alongside these products emphasizing that they do not cure, treat, prevent, or mitigate any disease, including Covid-19.

In addition to being blocked on Google Play, Jones had a tough week in other arenas as well. On Wednesday, he lost an appeal in a defamation case about his claims related to the 2012 Sandy Hook Elementary School mass shooting. Jones will have to pay $20,000 more in legal fees, combined with $150,000 he already owes, and the case hasn't even gone to trial yet.

Jones could make changes and attempt to resubmit the Infowars app to the Play Store, but given that so many other large tech platforms have banned his content permanently, the app review process might prove challenging.

## More Great WIRED Stories

- The mom who took on Purdue Pharma for its OxyContin marketing
- A critical internet safeguard is running out of time
- Covid-19 is bad for the auto industry—and even worse for EVs
- Going the distance (and beyond) to catch marathon cheaters
- Uncanny portraits of perfectly symmetrical pets
- 👁 Why can't AI grasp cause and effect? Plus: Get the latest AI news
- ✂ Optimize your home life with our Gear team's best picks, from robot vacuums to affordable mattresses to smart speakers



Lily Hay Newman is a senior writer at WIRED focused on information security, digital privacy, and hacking. She previously worked as a technology reporter at Slate magazine and was the staff writer for Future Tense, a publication and project of Slate, the New America Foundation, and Arizona State University. Additionally... Read more

SENIOR WRITER

## Featured Video



STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

DIVISION OF SOCIAL JUSTICE
HEALTH CARE BUREAU

March 12, 2020

**VIA EMAIL & U.S. MAIL**
Mr. Alex Jones
Managing Member
Free Speech Systems, LLC
3005 S Lamar Boulevard
Suite D109-393
Austin, TX 78704

### Re: CEASE AND DESIST NOTIFICATION

Dear Mr. Jones:

The New York State Office of the Attorney General ("OAG") is extremely concerned by your representations during the March 7, 2020 screening of The Alex Jones Show about the efficacy of certain products for sale on your website (InfowarsStore.com) that you assert will cure or prevent the 2019 novel coronavirus, including DNA Force Plus supplements, Silversol products and Superblue toothpaste.

The 2019 novel coronavirus (COVID-19) poses serious consequences to public health, and consumers are concerned as to how they can best protect themselves and their families. Your representations may mislead consumers as to the effectiveness of the above-named products in protecting against the current outbreak. Both the Centers for Disease Control and Prevention ("CDC") and the World Health Organization ("WHO") have stated that there is no specific medicine to prevent or treat this disease. Therefore, any misrepresentation that the above-named products are effective at combatting and/or treating COVID-19 violates New York law.

You are hereby advised to immediately cease and desist from making misleading claims as they violate New York's consumer protection statutes, Executive Law § 63(12) and General Business Law Article 22-A §§ 349 and 350, which prohibit fraudulent and deceptive business practices and false advertising.[1]

---

[1] The InfowarsStore.com current disclaimer ("[Th[ese] product[s] are not intended to diagnose, treat, cure, or prevent any disease...") at the bottom of the product page in miniscule font size makes it unlikely that potential customers will read or even see the disclaimer.

Within the next **ten business days,** please contact the undersigned to confirm that you have so complied. Your failure to comply with this directive may result in further action by this office. Please be advised that the Office of the Attorney General is authorized pursuant to Executive Law § 63(12) and General Business Law Article 22-A to bring suit to enjoin any deceptive acts and practices, and to seek restitution, damages, and penalties of up to $5,000 per violation (§ 350-d).

Very truly yours,

Lisa Landau
Chief, Health Care Bureau